1    **TROUTMAN SANDERS LLP**
Chad R. Fuller, Bar No. 190830
2    chad.fuller@troutman.com
Alan D. Wingfield, *pro hac vice*
3    alan.wingfield@troutman.com
11682 El Camino Real, Suite 400
4    San Diego, CA  92130
Telephone:    858.509.6056
5    Facsimile:    858.509.6040

6    Attorneys for Defendants
CarMax, Inc.;
7    CarMax Auto Superstores California, LLC;
CarMax Business Services, LLC; and
8    CarMax Auto Superstores West Coast, Inc.

9                    **UNITED STATES DISTRICT COURT**

10                  **NORTHERN DISTRICT OF CALIFORNIA**

11                      **SAN FRANCISCO DIVISION**

12   ANTHONY GILBERT SANTOS,                Case No. 3:17-cv-02447-RS

13                    Plaintiff,            **NOTICE OF MOTION, MOTION FOR**
                                            **SUMMARY JUDGMENT, AND POINTS**
14           v.                             **AND AUTHORITIES IN SUPPORT**
                                            **THEREOF**
15   CARMAX, INC., CARMAX AUTO
     SUPERSTORES CALIFORNIA, LLC,           Date:    Thursday, April 18, 2019
16   CARMAX BUSINESS SERVICES,              Time:    1:30 p.m.
     LLC, CARMAX AUTO                        Judge:   Hon. Richard Seeborg
17   SUPERSTORES WEST COAST, INC.,          Dept:    Courtroom 3, 17th Floor

18                    Defendants.

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 2

STATEMENT OF THE ISSUES TO BE DECIDED ...................................................... 4

STATEMENT OF UNDISPUTED FACTS ..................................................................... 4

I. CarMax is an independent motor vehicle dealer not included in the manufacturers' recall notice and repair procedures. .................................................................................. 4

II. Santos was well aware of the risk of open recalls when he purchased the Ford F-150 truck from CarMax .......................................................................................................... 6

III. The SCDS recall does not prove that the vehicle was defective. ................................ 7

IV. Ford failed to provide Santos or CarMax with a recall notice. ................................. 7

V. The origin of the April 29, 2014 fire is undetermined, and the F-150, itself necessary evidence to determine fire origin and cause, has been lost while in Santos' possession .......................................................................................................... 8

VI. Vehicle fires are common and occur for many reasons. ............................................. 9

VII. Santos hid his alleged claims against CarMax in his bankruptcy case. .................... 9

VIII. Santos produced no evidence of the value of the F-150. ........................................... 10

LEGAL STANDARD ......................................................................................................... 10

ARGUMENT ....................................................................................................................... 11

I. Santos should be judicially estopped from raising claims against CarMax when those claims were hidden from his creditors in his bankruptcy case. ............................ 11

II. Santos cannot recover on any claims because he lacks evidence showing that the SCDS was defective. ..................................................................................................... 14

   A. Santos cannot prove that CarMax's alleged representations of a defect-free vehicle were false because he lacks evidence showing that the SCDS was defective. ................................................................................................................ 14

      i. A recall is not evidence of a defect. ............................................................. 15

      ii. The existence of a fire does not prove that the SCDS was defective. ........ 15

      iii. Whether the SCDS was defective can never be determined because Santos lost the necessary evidence – the F-150 itself. ................................ 16

      iv. Santos cannot exclude an electrical fault related to the window as the cause of the fire. ........................................................................................ 18

   B. Santos' damages claims based on the fire are unsupported by evidence that the SCDS caused the fire. .......................................................................................... 19

III. Santos cannot recover on any of his fraud-based claims because he does not have any evidence to show that CarMax had actual knowledge that the F-150 he purchased was subject to an open recall, much less that it was defective. ...................... 19

   A. A claim under the CLRA, UCL, FAL and for common law misrepresentation requires proof that CarMax actually knew about the recall or of a defect. ............................................................................................... 19

   B. CarMax did not have actual knowledge of the F-150 recall or of a defect. .......... 21

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130-2092

- ii -

CASE NO. 3:17-CV-02447-RS
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1

2

**TABLE OF CONTENTS**
**(continued)**

Page

3      C.      CarMax had no reason to know of the recall or of a defect. .................................. 22

4   IV.   The UCL and FAL claims should be dismissed because Santos has no evidence
        showing a basis for restitution. .......................................................................................... 23

5   V.    The economic loss rule bars any recovery under Santos's negligent
        misrepresentation cause of action. .................................................................................... 25

6   CONCLUSION .................................................................................................................................. 25

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130-2092

CASE NO. 3:17-CV-02447-RS

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Ah Quin v. Cnty. of Kauai Dept. of Transp.*,

5
   733 F.3d 267 (9th Cir. 2013)..............................................................................13, 14

6
*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................................11

7

8
*United States ex rel. Berglund v. Boeing Co.*,
   835 F. Supp. 1020 (D. Ore. 2011)...........................................................................17

9

10
*Cadlo v. Owens-Illinois, Inc.*,
   23 Cal. Rptr. 1 (Cal. Ct. App. 2004) .......................................................................20

11
*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   973 P.2d 527 (Cal. 1999) ........................................................................................24

12

13
*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................11

14
*Chowning v. Kohl's Department Stores, Inc.*,
   735 F. App'x 924 (9th Cir. 2018) ........................................................................3, 25

15

16
*In re Coastal Plains, Inc.*,
   179 F.3d 197 (5th Cir. 1999)...................................................................................12

17

18
*Espejo v. Lockheed Martin Operations Support, Inc.*,
   Civ. No. 14-00095-HG-RLP, 2014 WL 6634492 (D. Haw. Nov. 21, 2014)...........17

19
*Gutierrez v. CarMax Auto Superstores California*,
   228 Cal. Rptr. 3d 699 (Cal. Ct. App. 2018) .......................................................20, 21

20

21
*Hamilton v. State Farm Fire & Cas. Co.*,
   270 F.3d 778 (9th Cir. 2001).........................................................................11, 12, 13

22

23
*Hay v. First Interstate Bank of Kalispell, N.A.*,
   978 F.2d 555 (9th Cir. 1992)..................................................................................2, 13

24
*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...................................................................25

25

26
*Korea Supply Co. v. Lockheed Martin Corp.*,
   63 P.3d 937 (Cal. 2003) ...........................................................................................24

27

28
*Kowalsky v. Hewlett-Packard Co.*,
   771 F. Supp. 2d 1156 (N.D. Cal. 2011) ...................................................................20

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130-2092

- iv -

CASE NO. 3:17-CV-02447-RS

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Leon v. IDX Systems Corp.*,
    464 F.3d 951 (9th Cir. 2006)...........................................................................................17

*Love. v. Tyson Foods, Inc.*,
    677 F.3d 258 (5th Cir. 2012).............................................................................................12

*Morris v. Cal. Dep't of Corr. and Rehab., Div. of Juvenile Justice*,
    Case No. CV 07-5954-JFW, 2008 WL 11340255 (C.D. Cal. July 31, 2008)..........................17

*In re Napster, Inc. Copyright Litig.*,
    462 F. Supp. 2d 1060 (N.D. Cal. 2006) .........................................................................17

*Oppenheimer v. City of La Habra*,
    Case No. 16-00018 JVS, 2017 WL 1807596 (C.D. Cal. Feb. 17, 2017) .................................17

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) .........................................................................13

*Resnick v. Hyundai Motor Am., Inc.*, No. CV 16-00596, 2017 WL 1531192 (C.D.
    Cal. Apr. 13, 2017)....................................................................................................20

*Ries v. Arizona Beverages USA, LLC*,
    No. 10-01139 RS, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013)...........................................11

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
    102 P.3d 268 (Cal. 2004) ...........................................................................................25

*Sloan v. Gen. Motors, LLC*,
    Case No. 16cv7244-EMC, 2017 WL 3283998 (N.D. Cal. Aug. 1, 2017) ...............................20

*In re Tobacco Cases II*,
    192 Cal. Rptr. 3d 881 (Cal. Ct. App. 2015) ...................................................................25

*United States v. Kitsap Physicians Serv.*,
    314 F.3d 995 (9th Cir. 2002)........................................................................................17

*Victorino v. FCA US LLC*,
    Case No. 16cv1617-GPC (JLB), 2018 WL 1083385 (S.D Cal. Feb. 27, 2018) ................20, 21

*In re Vioxx Class Cases*,
    103 Cal. Rptr. 3d 83 (Cal. Ct. App. 2009) ....................................................................25

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012).......................................................................................20

*Zang v. Umami Sustainable Seafood, Inc.*,
    -- F. App'x. ---, No. 17-55358, 2018 WL 4829990 (9th Cir. Oct. 4, 2018) ...........................11

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130-2092

- v -

CASE NO. 3:17-CV-02447-RS
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**Statutes**

Cal. Bus. & Prof. Code § 17208 ...................................................................................................2

Cal. Bus. & Prof. Code § 17500, *et seq.* ....................................................................................2

Cal. Civ. Code § 1750, *et seq.* ....................................................................................................2

Moving Ahead for Progress in the 21st Century Act; Pub. L. 112-141 ..................................5, 6, 22

**Other Authorities**

49 C.F.R. § 573.6(c) ...................................................................................................................15

Fed. R. Civ. P. 56(c) ...................................................................................................................11

Fed. R. Civ. P. 56(e) ...................................................................................................................11

Fed. R. Civ. Proc. 26(a)(1) .........................................................................................................10

Troutman Sanders LLP
11682 El Camino Real
Suite 400
San Diego, CA 92130-2092

- vi -

CASE NO. 3:17-CV-02447-RS
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on Thursday, April 18, 2019 at 1:30 p.m., in Courtroom 3, 17th floor of this Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants CarMax, Inc., CarMax Auto Superstores California, LLC, CarMax Business Services, LLC, and CarMax Auto Superstores West Coast, Inc. (collectively, "CarMax") will and hereby do move this Court for summary judgment as to all of the claims in Plaintiff's Second Amended Complaint.

CarMax asks the Court to enter judgment in its favor, and against Plaintiff, on all causes of action because Plaintiff is judicially estopped from raising claims against CarMax that were not disclosed in his bankruptcy case. CarMax is entitled to judgment in its favor on all causes of action because Plaintiff cannot show that the vehicle he purchased from CarMax was defective. CarMax is entitled to judgment on all fraud-based causes of action because Plaintiff cannot show that CarMax had actual knowledge of the open recall or defect. CarMax is entitled to summary judgment on all claims for restitution because Plaintiff has no evidence of the value of the vehicle at the time of purchase, and on his negligent misrepresentation claim seeking to recover economic loss because no such claim is allowed under California law.

This motion is based on this Notice of Motion and Motion for Summary Judgment, the attached Memorandum of Points and Authorities, the pleadings and papers on file herein, and such other matters as may be presented to the Court at the time of the hearing.

Dated: February 19, 2019               **TROUTMAN SANDERS LLP**

                                        By:    */s/ Chad R. Fuller*
                                               Chad R. Fuller
                                               Troutman Sanders LLP
                                               *Attorneys for Defendants*
                                               *CarMax, Inc.; CarMax Auto*
                                               *Superstores California, LLC;*
                                               *CarMax Business Services, LLC;*
                                               *CarMax Auto Superstores West*
                                               *Coast, Inc.*

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130-2092

- 1 -                    CASE NO. 3:17-CV-02447-RS

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1

**INTRODUCTION**

2        Plaintiff Anthony Santos ("Plaintiff" or "Santos") bases his five-count Second Amended

3   Complaint on his purchase of a Ford F-150 truck from CarMax in 2006 – more than 11 years before

4   filing suit.  Discovery confirms that summary judgment should be entered in favor of CarMax.

5        First, Santos should be judicially estopped from asserting claims against CarMax that he

6   hid from bankruptcy creditors.  Santos filed for Chapter 13 bankruptcy in 2010 and received a

7   discharge in 2015.  He was under an ongoing duty to update his disclosure of his assets during the

8   bankruptcy.  This duty is so important that any debtor who fails to disclose claims is presumed to

9   be shielding money from creditors.  Santos never disclosed his claims against CarMax, even though

10  Santos says he was aware of his potential claim in April 2014 – well before his October 2015

11  discharge.  That 2015 discharge left unsecured creditors with $135,000 in unpaid debts.  This Court

12  should not permit Santos to hide assets from bankruptcy creditors he was not paying, only to turn

13  around and seek to cash in for himself in this Court.

14       Second, the main thrust of his *plead* claims is that a flaw in the vehicle caused a fire.  After

15  discovery, this allegation remains unsupported by any evidence, and all claims must be dismissed.

16  Santos' theory is that CarMax's alleged representations and promises of a recall-free vehicle are

17  belied by the SCDS, which he claims was defective as shown by the recall.  However, a recall is

18  not evidence of a defect, but only indicates the possibility of a defect.  Manufacturers make recall

19  notices overinclusive, in the hopes of catching every vehicle that may have a defective component.

20  Similarly, the existence of the fire does not show that the SCDS switch caused the fire, as Santos

21  has no evidence that the fire originated with the SCDS.  Vehicle fires can result from many reasons

22  and choosing between possible causes requires speculation.  Compounding the lack of available

23  evidence as to whether the SCDS was defective is the fact that the truck itself mysteriously

24  disappeared while in Santos' possession.

25       Third, four of the five counts brought by Santos – under the UCL,[1] FAL,[2] CLRA,[3] and

26

27  [1] First Cause of Action – California Unfair Competition Law, CAL. BUS. & PROF. CODE § 17208.
    [2] Second Cause of Action – California False Advertising Law, CAL. BUS. & PROF. CODE § 17500,
    *et seq.*

28  [3] Third Cause of Action – California Consumer Legal Remedies Act, CAL. CIV. CODE § 1750, *et*

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130-2092

- 2 -

CASE NO. 3:17-CV-02447-RS

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

common law misrepresentation[4] – are premised on CarMax's alleged failure to disclose the supposed defect.  CarMax cannot be liable under these claims unless it had actual knowledge of the defect.  Santos lacks even a scintilla of evidence showing that CarMax knew of the recall, much less a defect.  Indeed, the difficulties faced by the public in obtaining vehicle-specific recall information in 2006 were well known – ultimately spurring the U.S. Congress to enact legislation in 2012 that led to the 2014 implementation of a federal internet lookup database of recalls on specific vehicles.  Once this vehicle-specific information became available in 2014 – and not spurred by litigation threats – CarMax used the new federal database to provide written, vehicle-specific recall information to all its customers.  Santos asks the Court to look back to 2006.  If it does so, it will see an era where recall information on specific vehicles was distributed by letters that CarMax never received, and where independent motor vehicle dealers were excluded from the recall system.  In 2014, however, vehicle-specific recall information became practically accessible to the public, and CarMax responded by immediately implementing a thorough disclosure program to ensure that any customer who purchases a vehicle from CarMax with an open recall is given specific information about a recall in writing at multiple points in the sales process.

        <u>Fourth</u>, Santos seeks restitution, the sole remedy available to him under the UCL and FAL.  However, in discovery Santos provided no evidence of the value of the F-150 as of his purchase, which is essential to showing entitlement to restitution.  This failure of proof mandates entry of summary judgment.  *See Chowning v. Kohl's Department Stores, Inc.*, 735 F. App'x 924, at *1–2 (9th Cir. 2018) (affirming summary judgment for defendant necessary on FAL and UCL restitution claims where plaintiff presented no evidence of the value of the goods at issue).

        <u>Fifth</u>, Santos seeks to recover under a negligent misrepresentation theory money he paid to purchase the F-150.  California law is clear that no claim for economic losses exist under a negligent misrepresentation theory when the parties have a contract governing their transaction.  His claim, if any, for economic losses rests under a fraud theory or breach of contract claim, not negligent misrepresentation.

---

*seq.*

[4] Sixth Cause of Action.

Troutman Sanders LLP
11682 El Camino Real
Suite 400
San Diego, CA 92130-2092

- 3 -

CASE NO. 3:17-CV-02447-RS
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## STATEMENT OF THE ISSUES TO BE DECIDED

1.    Should summary judgment be awarded to CarMax on all claims because the Plaintiff is judicially estopped from raising in this Court claims not disclosed in his bankruptcy case?

2.    Should summary judgment be awarded to CarMax on all claims because Plaintiff lacks evidence that the F-150 was defective?

3.    Should summary judgment be awarded to CarMax on the Plaintiff's fraud-based claims – UCL, FAL, CLRA and common law misrepresentation – because Plaintiff lacks evidence that CarMax had actual knowledge of a recall or of a defect in the F-150?

4.    Should summary judgment be awarded to CarMax on the Plaintiff's restitution claims, including the entirety of the UCL and FAL counts, because Plaintiff has no evidence of the value of the F-150 at the time of purchase?

5.    Should summary judgment be awarded to CarMax on Plaintiff's negligent misrepresentation claim for alleged economic losses suffered in the purchase of the F-150 because California law clearly bars such claim?

## STATEMENT OF UNDISPUTED FACTS

### I.    CarMax is an independent motor vehicle dealer not included in the manufacturers' recall notice and repair procedures.

1.    CarMax was founded in 1993 to pioneer the car superstore concept based on a no-haggle experience.  It is an independent used vehicle retailer with 25 stores in California and more than 200 stores nationwide.  CarMax's used vehicle stores in California are not affiliated with any vehicle manufacturer.  *See* **Exhibit A**, at ¶¶ 6–9.

2.    In support of its summary judgment, CarMax is submitting an expert report from Frank Borris, attached hereto as **Exhibit B.**  Borris holds a bachelor's degree in mechanical engineering and worked for more than 17 years for the National Highway Traffic Safety Administration ("NHTSA"), the federal agency primarily charged with investigating and monitoring motor vehicle recalls.  *Id.* at ¶¶ 6–16.  Among the numerous positions held at NHTSA, he was head of NHTSA's Office of Defects Investigation for five years, where he managed a staff of more than 50 employees charged with identifying and investigating motor vehicle safety,

Troutman Sanders LLP
11682 El Camino Real
Suite 400
San Diego, CA 92130-2092

- 4 -

CASE NO. 3:17-CV-02447-RS

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

managing hundreds of recalls annually, and monitoring the flow of information between NHTSA, vehicle manufacturers, and consumers at large. *Id.* at ¶¶ 12–5.

3.     Borris describes in his report the many impediments the public faced in 2006, and indeed up to 2014, in obtaining vehicle-specific recall information. *Id.* at ¶ 26. Manufacturers shared recall information principally by sending written recall notices to registered owners of vehicles. *Id.* at ¶¶ 26, 41–44.

4.     Borris describes how independent motor vehicle dealers are excluded from the recall system. *Id.* at ¶ 40. The recall notification laws administered by NHTSA implicitly, and the Federal Trade Commission ("FTC") explicitly, have intentionally excluded used motor vehicle dealers from having any duty or role in providing recall information to consumers. *Id.* at ¶¶ 26, 32–40.

5.     The recall system overseen by NHTSA puts the burden of notifying consumers, and remediating any defects covered by a recall, on the manufacturers and their franchise dealers. *Id.* at ¶¶ 26–7, 38–40.

6.     The FTC has considered in several rule-makings whether used motor vehicle dealers should have a duty to ascertain and disclose recalls on vehicles offered for sale to the public, and each time has rejected the concept. *Id.* at ¶¶ 32–6. The FTC decided instead that consumers should obtain recall information directly from manufacturers, and not through used motor vehicle dealers. *Id.* at ¶ 37.

7.     Prior to 2014 persons who were not registered or otherwise did not receive the written recall notices – such as used motor vehicle dealers – would have limited and cumbersome options to find vehicle-specific information. *Id.* at ¶ 38. The main mechanism available would be calling a franchise dealer and providing a Vehicle Identification Number ("VIN") orally, asking the dealer to look up the vehicle in the manufacturer's computer system, and trusting to the cooperation of the dealer and the accuracy of the search. *Id.*

8.     These well-known barriers to obtaining current, accurate recall information on motor vehicles led to the passage by the U.S. Congress of MAP-21, legislation mandating the creation of a federal database of vehicle-specific information. *Id.* at ¶ 41.

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130-2092

- 5 -

CASE NO. 3:17-CV-02447-RS

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

9.      In August 2014, pursuant to MAP-21, NHTSA made available its VIN Look-up site, available at www.nhtsa.gov/recalls.  *Id.* at ¶ 41–4.

10.     Once the NHTSA database became available in 2014, CarMax immediately supplemented its disclosure processes to provide written, acknowledged disclosure to its customers prior to sale when a specific vehicle is subject to an unrepaired recall.  Ex. A at ¶ 22.  This process put into place in 2014 includes a disclosure form, acknowledged by the customer's signature, containing detailed information about any open recall as reported by the NHSTA VIN Look-up website.  Ex. A at ¶¶ 23–46.

**II.     <u>Santos was well aware of the risk of open recalls when he purchased the Ford F-150 truck from CarMax.</u>**

11.     On February 13, 2006, Santos purchased a used 2002 Ford F-150 truck from CarMax.  **Exhibit C** at 151:14–20.

12.     At the time of his purchase, Santos was aware that vehicles can be subject to open recalls.  *Id.* at 37:7–13.

13.     Nevertheless, Santos did not ask any questions about the presence of open recalls on the F-150.  *Id.* at 34:8–10.

14.     According to Santos, the CarMax sales consultant did not know very much about the truck and could not answer questions about the history of the car, but that it would be unreasonable for individual sales associates to know about the history of every vehicle offered for sale at a CarMax store.  *Id.* at 20:20–25, 32:2–4.

15.     Santos knew that CarMax would not have information about the presence of an open recall because CarMax was not the registered owner of the vehicle.  *Id.* at 32:5–10.

16.     While Santos denies having been given the form at purchase, CarMax advises its customers in writing at all relevant times to register their purchases with the vehicle manufacturer.  Ex. A at ¶ 10.  At the time of Santos' purchase, CarMax provided him with the toll-free number to be used for such purpose.  *Id.* at ¶¶ 10, 14–6, 18.  The disclosure forms from Santos' deal file appear at **Exhibits A-1** and **A-2** to Exhibit A.

Troutman Sanders LLP
11682 El Camino Real
Suite 400
San Diego, CA 92130-2092

- 6 -

CASE NO. 3:17-CV-02447-RS
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

17.     It is undisputed that Santos did not register his purchase of the F-150 with Ford, even though Santos was aware that manufacturers would send recall notices only to registered vehicle owners. Ex. C at 32:5–10; **Exhibit D** at 88:5–8.

**III.     The SCDS recall does not prove that the vehicle was defective.**

18.     In January 2005, Ford announced it was recalling over 730,000 vehicles, including certain model year 2000 Ford F-150s. *See* **Exhibit E** at 3.

19.     The component at issue was the speed control deactivation switch ("SCDS"). *Id.*

20.     Not all of the vehicles recalled contained an SCDS that would fail. **Exhibit F** at 116:17–21.

21.     Ford has record of F-150s listed in the recall population that contained SCDS switches that lasted the life of the vehicle. *Id.* at 116:21–22. And, even if a SCDS switch fails, it does not always lead to a fire. *Id.* at 116:23–25.

22.     According to the federal government, 65 SCDS switches failed out of an estimated population of more than 3.7 million recalled vehicles. Ex. E at 1.

23.     Frank Borris, CarMax's expert, explains that the issuance of a recall on a given motor vehicle does not mean that the vehicle is actually defective. Ex. B at ¶¶ 22, 45, 52–3. Recall notices are often over-inclusive. *Id.* at ¶¶ 22. For example, if a manufacturer cannot trace a questioned component to a specific vehicle, the manufacturer may include broad classes of vehicle in the notice to make sure that the vehicles that do have the questioned component are included in the recall. *Id.* Many recalls concern issues that do not necessarily manifest into a defect. *Id.* at ¶ 51. The SCDS recall of the F-150 was of this type. *Id.* at ¶¶ 55–8. A defect could occur only under specific circumstances. *Id.*

**IV.     Ford failed to provide Santos or CarMax with a recall notice.**

24.     As the manufacturer, it was Ford's sole responsibility to send Santos the SCDS recall notice. Ex. F at 24:8–10; Ex. B at ¶ 26.

25.     Because of a combination of Santos failing to register his vehicle with Ford, and an error in Ford's obtaining registration information from the California Department of Motor Vehicles, Santos did not receive a recall notice until 2014. Ex. F at 66–72.

Troutman Sanders LLP
11682 El Camino Real
Suite 400
San Diego, CA 92130-2092

- 7 -

CASE NO. 3:17-CV-02447-RS
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    26.     Ford never sent CarMax a recall notice for the F-150.  Ex. F at 70:18–24.

2    **V.     The origin of the April 29, 2014 fire is undetermined, and the F-150, itself necessary
3    evidence to determine fire origin and cause, has been lost while in Santos' possession.**

4    27.     On April 29, 2014, a fire occurred at Santos' home.  **Exhibit G** at 1.

5    28.     Santos was not home.  Ex. C at 49:4–6.

6    29.     Santos' wife used the truck to pick up their granddaughter, returned home, and
7    parked in the driveway.  *Id.* at 161:17–162:9; 163:12–3.

8    30.     After returning home, Santos' wife noticed a fire.  *Id.* at 49:8–11.

9    31.     Santos had experienced trouble with the truck approximately one week before the
10   fire.  *Id.* at 149:7–24.

11   32.     The truck was not operating as it normally did.  *Id.* at 149:11–17.

12   33.     The driver's side window began automatically lowering and raising, despite the
13   switch not operating.  *Id.*; Ex. D at 181:21–183:1.

14   34.     The problem did not occur when Santos used the cruise control, or speed control.
15   Ex. C at 149:19–20.

16   35.     Santos did not take the truck to a mechanic or shop to have the window problem
17   investigated.  *Id.* at 150:4–7.

18   36.     The Fremont Fire Department responded to the fire.  Ex. G at 1.

19   37.     Captain Jeffrey Place investigated the fire and wrote an incident report.  *Id.* at 2.

20   38.     Captain Place concluded that the first material that ignited was unknown.  *Id.*

21   39.     Captain Place concluded that the ignition source was also unknown.  *Id.*

22   40.     Captain Place concluded that "the fire started either inside the engine compartment
23   for an unknown reason or underneath the vehicle due to the vehicle being parked over ordinary
24   combustibles."  *Id.*

25   41.     Approximately one week after the fire, Santos received a recall notice from Ford.
26   Ex. C at 168:5–9.

27   42.     In a vehicle fire investigation, the vehicle itself is essential evidence in determining
28   the cause or origin of the fire.  Ex. B at ¶ 64.

Troutman Sanders LLP
11682 El Camino Real
Suite 400
San Diego, CA 92130-2092
- 8 -     CASE NO. 3:17-CV-02447-RS
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

43.     Santos testified that the truck mysteriously disappeared from his home at some point after the fire.  Ex. C at 12:25–13:1.

44.     According to Santos, he does not know who took the truck.  *Id.* at 13:2–3.

45.     Because the F-150 is not available for inspection, it is not possible to determine the cause or origin of the fire that consumed Santos' vehicle.  Ex. B at ¶ 23(c).

**VI.     Vehicle fires are common and occur for many reasons.**

46.     Motor vehicle fires are not uncommon, with more than 168,000 vehicle fires reported nationally in 2017.  *Id.* at ¶ 23.

47.     The leading factors contributing to vehicle fires include mechanical failure, wiring insulation, and flammable liquids in the engine compartment.  *Id.* at ¶ 65.

48.     As indicated by the U.S. Fire Administration, the majority of all vehicle fires originate within the engine compartment, running gear, or wheel areas.  *Id.*

49.     Even though a vehicle is not turned on, certain electrical circuits maintain a connection to the battery and can be the source of fire.  *Id.* at ¶ 66.

50.     Common sources of electrical fires include damage caused by rodents, chafing of insulation due to vibration against a metal surface, heat induced insulation degradation from hot engine compartment or exhaust components, or other electrical system failures.  *Id.*

51.     The F-150 could have caught fire for reasons other than the SCDS.  *Id.*  An example of this is Santos' testimony of the un-commanded operation of a power window switch.  *Id.*  This could indicate the presence of an intermittent electrical short or a mechanical failure of a switch that could overstress the power window motor, associated wiring, relay or other circuitry potentially causing a fire.  *Id.*

52.     The source of origin of a fire cannot be attributed to a component under recall without specific investigation to exclude the many other reasons a vehicle might burn.  *Id.* at ¶ 64.

**VII.     Santos hid his alleged claims against CarMax in his bankruptcy case.**

53.     Santos filed for Chapter 13 Bankruptcy on October 8, 2010.  **Exhibit H**.

54.     As part of the summary of his bankruptcy schedules, Santos listed $135,768.11 owed to creditors holding unsecured nonpriority claims.  **Exhibit I**, at 10.

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130-2092

- 9 -

CASE NO. 3:17-CV-02447-RS
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

55.    Santos' Chapter 13 Plan provided that "general unsecured claims will be paid 0%." **Exhibit J**, at 1.

56.    The fire occurred in April 2014.  Santos asserts that he discovered his claims against CarMax when he received a recall notice from Ford approximately one week after the fire.  Ex. C at 84:4–21; 169:5–7.

57.    Santos did not file any update to his bankruptcy schedules and Santos did not disclose his claims against CarMax.  Ex. H.

58.    Santos received a bankruptcy discharge on October 20, 2015.  Ex. H, Dkt. No. 76.

59.    The Bankruptcy Court entered a final decree on October 29, 2015.  Ex. H, Dkt. No. 79.

60.    Unsecured creditors were not paid the $135,768.11, never having been told of Santos' potential claims against CarMax.  Exs. H, J.

**VIII.    <u>Santos produced no evidence of the value of the F-150.</u>**

61.    In response to the requirements of Rule 26(a)(1) of the Federal Rules of Civil Procedure, to requests for production, to interrogatories, and questions in his deposition, Santos produced no evidence of the value of the F-150 at the time of purchase other than the purchase price itself.  **Exhibit K** at 7–8 (Santos' 26(a)(1) disclosures, filed January 23, 2019, providing damages calculations "based on the number of people in California who purchased or leased a vehicle from CarMax that was the subject of a safety recall but had not been repaired prior to the sale or lease"); **Exhibit L** at 23–4 (Santos' responses to CarMax's requests for production, objecting to production of any documents evidencing damages or methodology of proving damages); **Exhibit M** at 22–4 (Santos' responses to CarMax interrogatories, objecting to answering interrogatories regarding his total damages, a categorization of his damages, the dollar amount for each category of damages, calculation of damages, and methodology of proof for damages); Ex D. at 32:2–6 (counsel for Santos instructing him not to answer questions about remedies sought).

<u>LEGAL STANDARD</u>

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

Troutman Sanders LLP
11682 El Camino Real
Suite 400
San Diego, CA 92130-2092
- 10 -
CASE NO. 3:17-CV-02447-RS
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1   genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

2   of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of demonstrating the

3   absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

4          However, on those issues that the moving party will not have the burden of proof, the

5   moving party need only show "that there is an absence of evidence to support the nonmoving

6   party's case." *Ries v. Arizona Beverages USA, LLC*, No. 10-01139 RS, 2013 WL 1287416, at *2

7   (N.D. Cal. Mar. 28, 2013) (internal citations and quotation marks omitted).  The burden then shifts

8   to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."

9   *Id.* (citing Fed. R. Civ. P. 56(e)).  A genuine issue of material fact is one that could reasonably be

10  resolved in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

11  (1986). As the Supreme Court has long held, more than a "scintilla of evidence" is necessary to

12  evade summary judgment, and the Ninth Circuit has affirmed that "hunches and speculation" are

13  no more than a scintilla of evidence and sustained summary judgment. *Zang v. Umami Sustainable*

14  *Seafood, Inc.*, -- F. App'x. ---, No. 17-55358, 2018 WL 4829990, at *1 (9th Cir. Oct. 4, 2018)

15  (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

16                                    **ARGUMENT**

17  **I.**   **Santos should be judicially estopped from raising claims against CarMax when those**
          **claims were hidden from his creditors in his bankruptcy case.**
18

19         Judicial estoppel arises because Santos failed to disclose his purported claims against

20  CarMax in his bankruptcy case.  "Judicial estoppel is an equitable doctrine that precludes a party

21  from gaining an advantage by asserting one position, and then later seeking an advantage by taking

22  a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th

23  Cir. 2001) (internal citations omitted).  Courts apply the doctrine "not only to prevent a party from

24  gaining an advantage by taking inconsistent positions, but also because of general considerations

25  of the orderly administration of justice and regard for the dignity of judicial proceedings, and to

26  protect against a litigant playing fast and loose with the courts." *Id.* (internal citations and quotation

27  marks omitted).  "The application of judicial estoppel is not limited to bar the assertion of

28

Troutman Sanders LLP
11682 El Camino Real
Suite 400
San Diego, CA 92130-2092

- 11 -

CASE NO. 3:17-CV-02447-RS

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases." *Id.* at 783 (internal citations omitted).

The doctrine of judicial estoppel is available when a court needs to protect the integrity of the judiciary. The Ninth Circuit has described this rationale as follows:

> The rationale for . . . decisions invoking judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy is that the *integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets*. The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding. *The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete.*

*Id.* at 785 (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999)) (emphasis in original).

In the context of a district court case following a bankruptcy proceeding, judicial estoppel is appropriate where a debtor failed to disclose potential assets during the pendency of a bankruptcy case, then later attempts to recover those assets though litigation. Bankruptcy law requires a debtor to disclose potential legal claims as assets. *Id.* (internal citations omitted). This duty continues throughout the duration of the bankruptcy.[5] *Id.*

Once a debtor becomes aware of a potential claim, he or she must disclose that claim. *Id.* at 784 ("Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset.") (citing *Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992) ("We recognize that *all* facts were not known to Desert Mountain at that time, but enough was known to require notification of the existence of the asset to the bankruptcy court.") (emphasis in original)).

---

[5] The duty to update bankruptcy schedules or petitions exists regardless of whether a debtor files under Chapter 7, 11, or 13 of the Bankruptcy Code. *See, e.g., Love. v. Tyson Foods, Inc.*, 677 F.3d 258, 263 (5th Cir. 2012) (affirming district court's application of judicial estoppel to claims not disclosed in Chapter 13 bankruptcy petition).

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130-2092

- 12 -

CASE NO. 3:17-CV-02447-RS
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    Where a plaintiff fails to list a claim against a defendant as part of his bankruptcy schedule,

2    then sues on that claim, the Ninth Circuit has upheld a district court's issue of summary judgment

3    in the defendant's favor. *Id.* at 785. In *Hamilton*, the plaintiff excluded a claim against his

4    insurance company as an asset of his bankruptcy estate, then later sued his insurance company. *Id.*

5    at 784. Regardless of when the claim accrued, the plaintiff was "required to have amended his

6    disclosure statements and schedules to provide the requisite notice, because of the express duties

7    of disclosure imposed on him by bankruptcy law and because both the court and [the plaintiff's]

8    creditors base their actions on the disclosure statements and schedules." *Id.*

9    Here, Santos hid his potential claim from bankruptcy creditors who took a combined

10   $135,000 loss. Santos filed for bankruptcy in 2010.[6] Santos completed his bankruptcy plan and

11   received a discharge on October 20, 2015. This occurred a year and a half *after* the fire and after

12   Santos received the recall notice, which Santos admits gave him notice of his claim against CarMax.

13   Santos had a duty to update his bankruptcy schedules with the court and he failed to do so.

14   Judicial estoppel of Santos' claims is appropriate even if Santos argues that his failure to

15   update his schedules was inadvertent. The requirement for a debtor to disclose all of his assets is

16   so strong that a debtor who fails to disclose assets is presumed to have intentionally misled the

17   court. *Ah Quin v. Cnty. of Kauai Dept. of Transp.*, 733 F.3d 267, 273 (9th Cir. 2013) ("In sum,

18   given the strong need for full disclosure in bankruptcy proceedings and the fact that the plaintiff-

19   debtor received an unfair advantage in the bankruptcy court, it makes sense to apply a presumption

20   of deliberate manipulation."). Only where a debtor reopens his or her bankruptcy proceeding to

21   correct an initial error does the presumption of deceit give way to examine the debtor's intent. *Id.*

22   Santos never reopened his bankruptcy case. He proceeded for another year and a half after

23   he knew about a potential claim against CarMax and did not amend his schedules. He cannot now

24   argue that his failure to disclose the claim, which he was under a continuing obligation to do, was

25   _____

26   [6] CarMax requests that the Court take judicial notice of Santos' public bankruptcy filings. *See Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014) ("Proper subjects of judicial

27   notice . . . include legislative history reports, court documents already in the public record and documents filed in other courts, and publicly accessible websites.") (internal citations and quotation

28   marks omitted).

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130-2092

- 13 -

CASE NO. 3:17-CV-02447-RS
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    simple error.  He cannot overcome the presumption that he intentionally misrepresented his position

2    to his creditors so that he would not have to repay all of his debts and could keep assets for himself.

3    Judicial estoppel is necessary to protect the integrity of the bankruptcy proceeding, protect Santos'

4    creditors, and prevent manifest injustice.

5    **II.    Santos cannot recover on any claims because he lacks evidence showing that the**
     **SCDS was defective.**

6

7        **A.    Santos cannot prove that CarMax's alleged representations of a defect-free**
         **vehicle were false because he lacks evidence showing that the SCDS was**
         **defective.**

8

9        Santos' pleadings created a false and negative impression.  In his Second Amended

10   Complaint, Santos plead that the "defective SCDS" caused the April 29, 2014 vehicle fire.  Yet, in

11   truth, Santos has no evidence that the SCDS caused the fire.  Santos' theory of the case is that

12   CarMax sold him a F-150 with a defective SCDS, despite "explicitly and implicitly" making

13   representations that the truck was "free from defects."  Dkt. No. 43 at ¶ 13.   For his breach of

14   contract claim, Santos contends that CarMax's 30-Day Limited Warranty promised him a vehicle

15   that was in "top condition"[7] and that CarMax did not hold up its end of the bargain by providing

16   him with a vehicle that was defective.  *See* Dkt. No. 56 at p. 7.  For his fraud-based and negligent

17   misrepresentation claims, the explicit and implicit representation of the condition of the vehicle as

18   being in "top condition" was misleading because of the presence of "a significant flaw in the

19   vehicle's condition."  Dkt. 56 at p. 5.  In sum, Santos' theory is that CarMax's representations about

20   the vehicle's condition were belied by a flaw in the condition in the vehicle.  Essential to his case,

21   therefore, is evidence that there was something actually defective in the F-150 he purchased.

22

23   _____

24   [7] CarMax contends that the phrase "top condition" is non-actionable puffery. *See Elias v. Hewlett-*
     *Packard Co.*, 903 F. Supp. 2d 843, 855 (N.D. Cal. 2012) (finding "[g]eneralized advertisements
25   that a computer is 'ultra-reliable' or 'packed with power'" were non-actionable puffery because the
     statements said "nothing about the specific characteristics or components of" the product); *see also*
26   *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (finding "higher
     performance," "longer battery life," "richer multimedia experience," "faster access to data" were
27   all non-actionable puffery).  The Court should, and CarMax requests, that this Court dismiss all
     claims on this basis.
28

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130-2092

- 14 -

CASE NO. 3:17-CV-02447-RS
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1

*i.      A recall is not evidence of a defect.*

2      As a threshold matter, Santos' theory that a recall equals a defect is incorrect. Frank Borris,

3  CarMax's expert on the recall system, testifies that a recall is based on a possibility of a defect, and

4  that many motor vehicles are recalled that have no defects. Borris first notes that federal regulations

5  already reflect the reality that not all vehicles subject to a manufacturers' recall actually contain a

6  defect. 49 C.F.R. § 573.6(c), NHTSA's regulation addressing recalls, states that manufacturers'

7  reports to NHTSA must include "[i]dentification of the vehicles or items of motor vehicle

8  equipment **potentially containing** the defect or noncompliance" and "[t]he total number of vehicles

9  or items of equipment **potentially containing** the defect or noncompliance," along with "[t]he

10  percentage of vehicles or items of equipment . . . estimated to actually contain the defect or

11  noncompliance . . .." (emphasis added). In cases where a manufacturer cannot determine which

12  portion of the potentially affected population of vehicles contains the purported defect, it must

13  recall the entire population. Manufacturers err on the side of an expanded recall population to

14  ensure that the small portion of vehicles that are actually affected are captured and repaired.

15      Borris' view is confirmed by testimony from Ford. Ford's representative testified that not

16  every vehicle that was subject to the SCDS recall would have an SCDS switch that failed or would

17  fail. Ford's representative testified that there were F-150s within the recall population that had

18  SCDS switches that would last the life of the truck. The representative further testified that if the

19  SCDS switch failed, that failure would not always lead to a fire.

20

*ii.      The existence of a fire does not prove that the SCDS was defective.*

21      Santos also errs in attributing the cause and origin of the fire to a defect in the SCDS, without

22  having any actual evidence linking the two. Vehicle fires are common, and it is not possible to

23  determine the origin and cause of a vehicle fire without examining the vehicle itself. The only

24  investigator who had access to the vehicle concluded that the cause could not be determined.

25  Because Santos mysteriously lost the F-150, it is simply not possible at this time to ascertain a

26  cause and origin of the fire.

27      In discovery, Santos produced an incident report from the Fremont Fire Department which

28  responded to and investigated the fire of Santos' vehicle. Captain Jeffrey Place of the Fremont Fire

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130-2092

- 15 -

CASE NO. 3:17-CV-02447-RS

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Department investigated the fire. *See* Ex. G. Captain Place concluded that the fire started either inside the engine compartment for an unknown reason or underneath the vehicle because the truck was parked over "ordinary combustibles." *Id.* And Captain Place could not tell what started the fire. *Id.*

Santos testimony makes clear that the theory that the SCDS failed causing the fire is solely supported by his personal opinion:

> Q.    Okay.  And [the insurance investigator] told you that the speed control switch was the cause of the fire?
> A.    No.  He didn't tell me.  I found out later.
> Q.    From whom?
> A.    From the recall notice.
> Q.    Okay.  So when you received the recall notice, that's when your belief that the speed control switch –
> A.    Yes.
> Q.    -- started the fire?
> A.    Yes.  That was the only conclusion I can come up with.
> Q.    So outside of that recall notice –
> A.    Right.
> Q.    -- that has been marked as Exhibit 3, has anyone told you affirmatively that they thought the switch, the speed control switch in the car was the cause of the fire?
> A.    No.

Ex. C at 84:4–24. Santos' opinion that the SCDS was defective was based solely on his own, personal conclusion after he received the recall notice. Ex. D at 182:21–183:1. Santos' lay opinion is not evidence, only speculation. Frank Borris, a *bona fide* expert, makes the common-sense point that a fire cannot be attributed to a component under recall without basing the opinion on an inspection of the vehicle itself. Santos has no admissible evidence that the SCDS was defective.

> iii.    *Whether the SCDS was defective can never be determined because Santos lost the necessary evidence – the F-150 itself.*

Yet another of Santos' errors is his unexplained loss of the F-150 truck. Indeed, the mysterious disappearance of the truck rises to the level of spoliation, meaning that Santos' lack of evidence is a product of his own creation. "Spoilation occurs when a party destroys, significantly alters, or fails to preserve evidence in pending or reasonably foreseeable litigation." *Oppenheimer v. City of La Habra*, Case No. 16-00018 JVS (DFMx), 2017 WL 1807596, at *3 (C.D. Cal. Feb. 17, 2017) (citing *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)).

Troutman Sanders LLP
11682 El Camino Real
Suite 400
San Diego, CA 92130-2092

- 16 -

CASE NO. 3:17-CV-02447-RS
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The duty to preserve evidence arises "when the party has some notice that the evidence may be relevant to litigation, or potential litigation." *Morris v. Cal. Dep't of Corr. and Rehab., Div. of Juvenile Justice*, Case No. CV 07-5954-JFW (CWx), 2008 WL 11340255, at *2 (C.D. Cal. July 31, 2008) (citing *Kitsap Physicians Serv.*, 314 F.3d at 1001; *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) ("As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action."). This duty is triggered "as a matter of law once a party knows or reasonably should know the evidence is potentially relevant to litigation when the destruction of that evidence prejudices the opposing party." *Espejo v. Lockheed Martin Operations Support, Inc.*, Civ. No. 14-00095-HG-RLP, 2014 WL 6634492, at *12 (D. Haw. Nov. 21, 2014) (quoting *United States ex rel. Berglund v. Boeing Co.*, 835 F. Supp. 1020, 1050 (D. Ore. 2011)) (internal quotation marks omitted). As courts within this district have recognized, litigation need not be "imminent" to trigger this duty. *In re Napster*, 462 F. Supp. 2d at 1068. Instead, it need only be "probable." *Id.* (internal citations omitted). Santos testified that he concluded the SCDS switch caused the fire as soon as he received the recall notice. Ex. C at 84:9–14. At that time, he had a duty to preserve the crucial evidence in this case – the F-150. Instead, the truck just disappeared. *Id.* at 13:6–7.

CarMax is, without a doubt, prejudiced by Santos' failures to preserve critical evidence in this case. "The prejudice inquiry looks to whether the spoiling party's actions impaired the non-spoiling party's ability to go to trial or threatened to interfere with the rightful decision of the case." *Espejo*, 2014 WL 6634492, at *15 (quoting *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006)) (internal quotation marks omitted). As noted above, Santos plead that the SCDS caused the vehicle fire. Yet, when he plead that allegation, he had not had possession of the F-150 for three years, and he knew that no one had ever inspected the F-150 and concluded that the SCDS caused the fire. Access to the F-150 is essential to determine cause and origin, meaning that CarMax lacks the one piece of essential evidence necessary to refute Santos' claims.

Santos had a duty to preserve the truck or to take reasonable steps to ensure the truck was preserved. His failings have prevented CarMax from proving to the Court that his truck was just

Troutman Sanders LLP
11682 El Camino Real
Suite 400
San Diego, CA 92130-2092

- 17 -

CASE NO. 3:17-CV-02447-RS
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

like the overwhelming majority of vehicles subject to unrepaired recalls – another unaffected member of an overinclusive population.

        *iv.*      *Santos cannot exclude an electrical fault related to the window as cause of fire.*

Not only is Santos unable to offer evidence that the SCDS was defective, his deposition testimony provides a different explanation for the fire.  When asked about the condition of the truck, Santos testified in his subrogation deposition that the truck was not acting normally in the weeks leading up to the fire and that "something's not right."  Ex. C at 150:12.  The driver's side window began automatically lowering and raising, despite the switch not operating.  Ex. D at 181:21–183:1.  He explained further:

> A.    . . . Prior to that car catching on fire or whatever caught on fire, the car was doing something weird.  The truck was doing something weird that wasn't normal.  I don't remember if it was the – the windows weren't rolling down or it wouldn't go in reverse.  Something was different with that car.  But then it went away.
> Q.    It went away on its own?
> A.    Yeah.  I said something was different.  It was not when I was in cruise control, though.  It was something was different, because, you know how your car drives, right?  So --
> Q.    How long before the fire was this different –
> A.    I would say about a week.
> Q.    About a week?
> A.    About a week.
> Q.    Was there any like engine lights that came on in the car at that time?
> A.    No.  No engine lights.
> Q.    And you didn't take it to get checked to see what was wrong with –
> A.    No.  Because it went away.
> Q.    Okay.  How long did this weird issue –
> A.    Well, I don't drive the –
> Q.    – persist?
> A.    – the truck too often.  When I drove it that time, I thought something's not right.  And I don't know what it is, you know.  So I just said something's not right.  I don't remember if it's the windows or the gear or the – something was just – I don't remember.

Ex. C at 149:10–150:15.

Borris, with extensive experience in vehicle defects, observes that the behavior of the window could be explained by an electrical fault, including a short circuit, which in turn could be a source and origin of the fire.  In contrast to the window – where there was a known problem pointing to an electrical fault – there were no tell-tales of a problem with the SCDS.  According to

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130-2092

- 18 -

CASE NO. 3:17-CV-02447-RS

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1   the government report on the SCDS, a precursor to the failure of the SCDS would be problems in

2   operating the speed control system or fluid leaks. Santos testified to no such problems.  Instead, his

3   testimony presents the F-150 as being problem-free, other than the window electrical fault.

4           In sum, if the fact finder were to be asked to speculate as to the source and origin of the fire,

5   then the more probable conclusion is that the window fault – which was known to have actually

6   existed – would be the source of the fire, not the SCDS, where even the existence of a defect itself

7   requires speculation.

8           **B.      Santos' damages claims based on the fire are unsupported by evidence that
            the SCDS caused the fire.**

9

10          In his deposition, Santos asserted he would claim actual damages caused by the fire.  For

11  the same reasons that Santos cannot show that CarMax's representations were misleading because

12  he cannot show that the SCDS was defective, he cannot show that the SCDS, even if defective,

13  caused the fire.  Unless he has affirmative proof that he suffered damages as a result of these

14  purported misstatements, he cannot recover actual damages as a matter of law.

15          Santos, however, does not have any evidence that affirmatively shows the fire resulted from

16  the SCDS, regardless whether it was defective.  He lacks such evidence, and always will, because

17  the F-150 is gone.  Summary judgment should be entered on any actual damages claims.

18  **III.    Santos cannot recover on any of his fraud-based claims because he does not have
            evidence showing that CarMax had actual knowledge that the F-150 he purchased
            was subject to an open recall, much less that it was defective.**

19

20          **A.      A claim under the CLRA, UCL, FAL and for common law misrepresentation
                    requires proof that CarMax actually knew about the recall or of a defect.**

21

22          Santos must demonstrate that CarMax actually knew about the recall or of any defect

23  associated with his truck to prevail on his fraud-based claims.  Santos' CLRA,[8] UCL, FAL, and

24  misrepresentation claims are premised on California fraud law, which requires a plaintiff to show

25  that a defendant *knew* that the representations it was making were false. *See Kowalsky v. Hewlett-*

26  _____

    [8] Santos seeks only injunctive relief, not damages, under his CLRA claim.  *See* Dkt. No. 43 at ¶ 65.
27  The Court dismissed Santos' claim for injunctive relief in its May 8, 2018 Order.  *See* Dkt. No. 56
    at p. 7.  Consequently, CarMax requests that the Court dismiss Santos' CLRA claim because he
28  has plead no viable remedy under this Count.

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130-2092
- 19 -                    CASE NO. 3:17-CV-02447-RS
                         DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    *Packard Co.*, 771 F. Supp. 2d 1156, 1162 (N.D. Cal. 2011) ("Without knowledge of the defect, [the

2    defendant] lacked awareness of the basic fact that allegedly rendered its representations about the

3    printer misleading or deceptive.") (dismissing UCL and CLRA claims); *Wilson v. Hewlett-Packard*

4    *Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012) ("Plaintiffs must allege [the defendant's] knowledge of a

5    defect to succeed on their claims of deceptive practices and fraud."); *Cadlo v. Owens-Illinois, Inc.*,

6    23 Cal. Rptr. 1, 5 (Cal. App. 2004) (noting the elements of a negligent misrepresentation cause of

7    action include knowledge of the falsity of the misrepresentation).

8         The rationale for this requirement is clear: "A duty to disclose cannot exist if the defendant

9    was not aware of the facts that were not disclosed." *Gutierrez v. CarMax Auto Superstores*

10   *California*, 228 Cal. Rptr. 3d 699, 723 (Cal. App. 2018).

11        Santos must show, moreover, that CarMax knew about the *specific* recall or defect

12   associated with the vehicle – the SCDS switch – not a general knowledge of potential recalls or

13   defects. *Victorino v. FCA US LLC*, Case No. 16cv1617-GPC (JLB), 2018 WL 1083385, at *8 (S.D

14   Cal. Feb. 27, 2018) (citing *Sloan v. Gen. Motors, LLC*, Case No. 16cv7244-EMC, 2017 WL

15   3283998, at *7 (N.D. Cal. Aug. 1, 2017); *Resnick v. Hyundai Motor Am., Inc.*, No. CV 15-00593,

16   2017 WL 1531192, at *14 (C.D. Cal. Apr. 13, 2017))). Consequently, Santos cannot argue that

17   CarMax was generally aware that vehicles may be subject to defects. He must provide evidence to

18   the Court that CarMax knew about the specific open recall associated with the truck and chose not

19   to disclose that information to him, something he cannot do.

20        California courts, moreover, have recognized that actual knowledge – not potential

21   knowledge, not failure to investigate, but ***actual*** knowledge – of a motor vehicle recall is necessary

22   to find a fraud-based violation. In *Gutierrez v. CarMax Auto Superstores California*, 228 Cal. Rptr.

23   3d 699, the plaintiff raised against CarMax the same argument that Santos raises here. Gutierrez

24   contended that CarMax committed fraud when she purchased a vehicle that was subject to an open

25   recall without disclosing it. The trial court sustained a demurrer. The Court of Appeals reversed

26   and remanded, holding that the plaintiff had adequately plead that CarMax had actual knowledge

27   of the open recall associated with her vehicle. *Id.* at 723. On remand, the trial court entered

28   summary judgment in favor of CarMax, finding, first, that the plaintiff failed to present any

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130-2092

- 20 -

CASE NO. 3:17-CV-02447-RS
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

evidence that CarMax "had actual knowledge of the safety recall," and, second, that actual knowledge, rather "constructive knowledge" that CarMax "could have ascertained" the existence of the recall, was the controlling standard. *See* Order, attached hereto as **Exhibit N**. In sum, the state courts of California, interpreting California law, have held specifically that actual knowledge is required to sustain a claim, rejecting constructive knowledge as the standard.

Federal courts applying California law have taken the same view. The Southern District of California's recent decision in *Victorino v. FCA US LLC* is instructive. The plaintiffs filed a purported class action based on alleged defects in the 2013-2016 Dodge Dart vehicles equipped with a Fiat C635 manual transmission that caused their vehicles' clutches to fail and stick to the floor. 2018 WL 1083395, at *1. The defendant moved for summary judgment on the plaintiffs' CLRA and UCL claims, contending that it did not have pre-sale knowledge of the defect. *Id.* at *5. The plaintiffs offered evidence of the defendant's subsequent efforts to change the part at issue and showed that the defendant knew about different issues with the clutch system. *Id.* at *9, 10. This was not enough to show that the defendant knew about the specific defect at issue and the court granted summary judgment to the defendant. *Id.* at *10.

**B.    CarMax did not have actual knowledge of the F-150 recall or of a defect.**

Santos has no evidence showing that CarMax knew about the open recall or of a defect because all of the evidence affirmatively demonstrates the opposite – that CarMax did not know about the open recall. Ford's representative has testified that CarMax was never sent a recall notice for the F-150 Santos purchased. Santos himself recognized that CarMax did not know about the recall. In his deposition, he testified that CarMax would not have received a recall notice because it was not the registered owner. He further testified that it would be unreasonable to expect each individual sales associate to know the individual history of every vehicle available at a CarMax store.

California law is clear: CarMax has no duty to disclose if it was not aware of facts that were not disclosed. Santos has no evidence to offer the Court on this point and CarMax's evidence is conclusive. Santos cannot recover as a matter of law on his fraud-based claims.

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130-2092

- 21 -

CASE NO. 3:17-CV-02447-RS
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### C.    CarMax had no reason to know of the recall or of a defect.

Any argument that CarMax's actual knowledge could be inferred from the circumstances should be rejected.  CarMax is an independent seller of used vehicles.  As an independent used car retailer without a relationship to Ford, CarMax was not given access to recalled information.

Furthermore, as an independent dealer, CarMax does not have access to the manufacturers' prescribed parts to fix vehicle components that are subject to open recalls.  Nor is CarMax authorized by manufacturers to fix open recalls.  Before 2014, CarMax was completely shut out of the manufacturers' system for recall information and repair.

The federal government recognized the public's difficulty in obtaining vehicle-specific recall information.  In 2012, Congress enacted the Moving Ahead for Progress in the 21st Century Act ("MAP-21"), which directed the U.S. Department of Transportation to require motor vehicle safety recall information to be made available to the public in a format where consumers could search by make, model, and VIN.  Pub. L. 112-141; 126 Stat. 405, § 31301.  The Department of Transportation delegated its authority to the National Highway Traffic Safety Administration ("NHTSA"), which was tasked with developing an online database for consumers to find VIN-specific recall information.[9]

On August 20, 2014, NHTSA announced the availability of the VIN Look-up system, available both on the NHTSA website and at safercar.gov.[10]  The online search tool offers VIN-specific recall information, permitting consumers to see if a specific vehicle is subject to an open safety recall.

Within three months of its release, CarMax began using the NHTSA VIN Look-up as part of its sales process.  Ex. A at ¶¶ 22–5.  Since November 2014, a customer who purchases a vehicle

---

[9] *See* NHTSA Press Release, "NHTSA to Provide Free VIN Searches to help Consumers Check Cars, Light Trucks and Motorcycles for Uncompleted Recalls," NHTSA 24-13 (Aug. 14, 2013), *available at* www.transportation.gov/briefing-room/nhtsa-provide-free-vin-searches-help-consumers-check-cars-light-trucks-and-motorcycles (last visited Jan. 29, 2019).

[10] *See* NHTSA Press Release, "U.S. Department of Transportation Unveils New, Free, Online Search Tool for Recalls Using Vehicle Identification Number," NHTSA 36-14 (Aug. 20, 2014), *available at* www.transportation.gov/briefing-room/us-department-transportation-unveils-new-free-online-search-tool-recalls-using-vehicle (last visited Jan. 29, 2019).

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130-2092

- 22 -

CASE NO. 3:17-CV-02447-RS
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

from CarMax, or is even interested in a vehicle from CarMax, receives vehicle-specific recall disclosures at numerous points in the shopping experience and the sales process. *Id.* at ¶¶ 22–46. If a customer is interested in purchasing a specific vehicle, a CarMax sales consultant must walk the customer through recall disclosures, including the history of each vehicle, as well as reviewing the manufacturer's recall status through the NHTSA VIN Look-up, which includes details about any open recalls shown for the vehicle. *Id.* at ¶¶ 38–42. A CarMax associate then provides each customer with a form alerting the customer to the NHTSA VIN Look-up information and confirming that a full copy of the NHTSA report, which discusses the nature of any recall, has been provided to the customer. *Id.* at ¶¶ 43–45. The form advises the customer to have any open recall work completed immediately following purchase. *Id.* at ¶ 44. The buyer and any co-buyer must sign the form before any other sales paperwork is signed. *Id.* Until November 2014, this extensive disclosure regime was impossible.

CarMax's disclosure process ensures that any customer shopping for a vehicle at CarMax is provided with multiple opportunities before arriving at the store, and again at the store, to learn about any open recalls associated with individual vehicles offered for sale. *Id.* at ¶¶ 26–46. The process also guarantees that before any vehicle purchase, CarMax affirmatively discloses twice to customers – once through the computer-driven sales process and again through a form signed by the customer – the existence of any open recalls and the nature of the recall as provided by the NHTSA VIN Look-up. *Id.* at ¶ 45. Prior to 2014, none of this was possible.

In sum, the Court cannot infer actual knowledge from the 2006 circumstances. As illustrated by events after 2006, the public including used car dealers were practically limited in the ways they could obtain VIN-specific recall information to receipt of records letters from the manufacturer. CarMax did not receive any recall notification about the F-150 purchased by Santos. CarMax did not know.

## IV.    The UCL and FAL causes of action should be dismissed because Santos has no evidence showing a basis for restitution.

In ruling on CarMax's Motion to Dismiss the Second Amended Complaint, the Court dismissed with prejudice all claims for injunctive relief. *See* Dkt. No. 56 at p. 7. This leaves actual

Troutman Sanders LLP
11682 El Camino Real
Suite 400
San Diego, CA 92130-2092

- 23 -

CASE NO. 3:17-CV-02447-RS
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1  damages as a possible remedy for the causes of action alleging breach of contract and common law

2  misrepresentation, and restitution as a possible remedy for the UCL and FAL causes of action.

3  While Santos has failed to provide any calculation of damages in this case, Santos in his deposition

4  did articulate that he suffered unspecified actual damages in the form of property losses not covered

5  by insurance in the fire as well as for emotional upset.   However, it is clear now that he does not

6  have evidence showing a claim for restitution, the only form of relief available to him under the

7  UCL and FAL now that the injunction claim has been dismissed with prejudice.  Because he lacks

8  necessary evidence of the F-150's value as of the purchase, these causes of action should be

9  dismissed with prejudice.

10  Damages "cannot be recovered" under the UCL.  *Korea Supply Co. v. Lockheed Martin*

11  *Corp.*, 63 P.3d 937, 943 (Cal. 2003).  Remedies are "generally limited to injunctive relief and

12  restitution." *Id.* (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539

13  (Cal. 1999)).  The remedies under the FAL are "interpreted in the same fashion and allow for the

14  same type of relief." *In re Tobacco Cases II*, 192 Cal. Rptr. 3d 881, 887 n.2 (Cal. Ct. App. 2015).

15  Unless the consumer can show that he or she received no value in the transaction, restitution

16  of the full purchase price is not available.  "A full refund may be available in a UCL case when the

17  plaintiffs prove the product had no value to them." Id. at 895.  Santos here owned and used the F-

18  150 for eight years.  The F-150 was indisputably worth more than zero.  The proper calculation of

19  restitution, therefore, is "[t]he difference between what the plaintiff paid and the value of what the

20  plaintiff received." *In re Vioxx Class Cases*, 103 Cal. Rptr. 3d 83, 96 (Cal. Ct. App. 2009); *see also*

21  *In re Tobacco Cases II*, 192 Cal. Rptr. 3d at 894.  Without evidence of the value of what plaintiff

22  received – here, the F-150 as delivered to Santos in 2006 – no calculation of restitution is possible.

23  In *Chowning v. Kohl's Department Stores, Inc.*, 735 F. App'x 924, 925 (9th Cir. 2018), the Ninth

24  Circuit held that summary judgment should be entered on a restitution claim under the UCL and

25  FAL when a plaintiff fails to provide evidence of the value of goods received, because the plaintiff

26  "failed to meet her burden to prove she was entitled to restitution."

27  Here, Santos provided *no* evidence in response to discovery requests or in deposition of the

28  value what he received.  When asked about potential damages at his deposition, Santos' attorney

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130-2092

- 24 -

CASE NO. 3:17-CV-02447-RS
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*instructed him not to answer*. Ex. D at 32:2–6.  It is way too late to start searching for that necessary evidence.  Summary judgment on the UCL and FAL must be entered in favor of CarMax.

**V.      The economic loss rule bars recovery under Santos' negligent misrepresentation cause of action.**

Even if Santos were to present evidence of economic losses in the 2006 purchase – which he has not – Santos could not recover those losses under a negligent misrepresentation claim.  "[I]n California, a consumer may not recover under a negligence theory for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise."  *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1064 (N.D. Cal. 2012) (citing *Robinson Helicopter Co., Inc. v. Dana Corp.*, 102 P.3d 268, 271 (Cal. 2004)).  "Purely economic damages to a plaintiff which stem from disappointed expectations from a commercial transaction must be addressed through contract law; negligence is not a viable cause of action for such claims."  *Id.* (citing *Robinson*, 102 P.3d at 271).  Santos claims he was promised one thing, but received another.  Even if Santos could prove all of the elements of negligent misrepresentation, he could not recover economic losses because of the economic loss rule.

**CONCLUSION**

For the foregoing reasons, CarMax requests that the Court enter summary judgment in its favor on all of Santos' claims.

Dated: February 19, 2019                              Respectfully submitted,

                                              **TROUTMAN SANDERS LLP**


                                              By:*/s/ Chad R. Fuller*
                                                  Chad R. Fuller
                                                  *Attorneys for Defendants,*
                                                  CarMax Inc.; CarMax Auto Superstores
                                                  California, LLC; CarMax Business
                                                  Services, LLC; CarMax Auto
                                                  Superstores West Coast, Inc.

TROUTMAN SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130-2092

37705734

- 25 -

CASE NO. 3:17-CV-02447-RS
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT